<hr />

## STATE vs. BÆTZ and others.

CAUSE OF ACTION: STATE TREASURER. *Liability of public officer for moneys paid before due to the receiptor, and without warrant.*

1. If the state treasurer pays an appropriation before the time of payment appointed by law, or without the warrant of the secretary of state when such warrant is required, he will be liable for any damages resulting to the state from such irregular payment. But where such a payment of a legislative appropriation for the state hospital for the insane was made to the treasurer of said hospital, who was the person appointed by law to receive it, and was receipted for by him in his official character, and used by him to pay claims against the hospital for whose payment the money was by law appropriated, and the amount paid was placed to the treasurer's credit in the books of the secretary of state (even if irregularly): *Held*, that the state treasurer, after the money became by law due and payable to the hospital treasurer, was not bound to refund the amount to the state treasury, and his failure to pay over the same to his successor in office was not a breach of his official bond.

2. The hospital treasurer received the state treasurer's bank check as money, and, after the appropriation became legally payable to him, receipted to the state treasurer for the amount as money. He loaned the check as money to the bank on which it was drawn, and received from the bank, to secure the loan, collaterals, on which he collected a sum of money exceeding the amount of the check, and with such money took up orders duly drawn on him as hospital treasurer for liabilities of the hospital. The assignee in bankruptcy of said bank recovered from him the amount so collected on the collaterals. *Held*, that he received and expended the money as hospital treasurer, and relieved the state from all liability on the demands for which such orders were issued; and his mental election

"to consider the money collected on the collaterals as held by him for the assignee, if such assignee should recover the same, and the hospital orders as his individual property," could not change the legal character and effect of his acts.

APPEAL from the Circuit Court for *Dane* County.

This action was brought in the circuit court by the late attorney general, upon the official bond of *Henry Bætz*, late state treasurer, against *Bætz* and his sureties in such bond. The term of office of the defendant *Bætz* expired on the first Monday in January, 1874; and Ferdinand Kuehn was his successor therein.

The undisputed facts in the case, as they appear by the pleadings and proofs, are these: By ch. 6, Laws of 1873, the legislature appropriated the sum of $53,947 to the hospital for the insane at Madison, for current expenses and ordinary repairs from January 1st, 1873, to February 1st, 1874; and enacted that such sum should be "drawn from the treasury not oftener than quarterly in advance." By the usual course of business in the offices of the secretary of state and state treasurer, the sum thus appropriated became payable to the hospital, in equal installments, on the passage of the act, and on the first days of April, July and October, 1873. Simeon Mills was the treasurer of the hospital, duly authorized to receive such installments from the state treasurer, and as such regularly received the three installments first payable.

On the 22d day of September, 1873, *Mr. Bætz* had on deposit in the bank of Madison, subject to his check, a sum exceeding $10,000, of the money of the state. On that day, he drew his check on the bank for $10,000, payable to the order of one Phipps, a clerk in his office, and gave Phipps directions to present it to the bank for payment, but to accept as payment thereof the receipt for that sum of Mr. Mills, as hospital treasurer, on account of the installment of the appropriation to the hospital which would become payable on the first of October following. On the same day, the check

was duly presented to the bank for payment, but was not then paid. Within two or three days thereafter, and pursuant to an agreement between Mr. Hill, the president of the bank, and Mr. Mills, Hill delivered to Mills collaterals belonging to the bank, of the par value of $13,000, or a little more, to secure him for receiving the above mentioned check of the state treasurer as a payment on account of money to become due the hospital on the appropriation. Thereupon Mills accepted and received the check (which was duly indorsed by Phipps), and another for $3000, drawn by *Bætz* on a Milwaukee bank, and gave his receipt to the state treasurer for $13,000. He then deposited the $10,000 check in the bank of Madison; and that amount was credited to him and charged to *Bætz* in the books of the bank.

On the 27th day of the same month, the bank of Madison closed its doors and ceased to pay its obligations; and on the fourth day of October following, on the petition of its president, Mr. Hill, the bank was adjudicated a bankrupt by the proper district court of the United States; and soon thereafter an assignee of the estate and effects of the bankrupt was duly appointed.

On the third of October, 1873, Mills procured from the office of the secretary of state an instrument in the form of a warrant for the payment of the October installment of the hospital appropriation — the amount thereof being $13,487.75, — and took the same to the office of the state treasurer. The instrument had indorsed upon it the name of John S. Dean (who was then assistant secretary of state), but was not signed by the secretary. The state treasurer thereupon paid Mills the balance of the installment ($487.75) in money, and the latter gave the treasurer the following receipt for the whole installment, indorsed upon the warrant: " STATE TREASURER'S OFFICE. Received, Madison, October 3, 1873, from the state treasurer, payment in full for this certificate. SIMEON MILLS,

Treasurer." Mills had previously received the money on the check for three thousand dollars.

The whole amount of the installment was afterwards placed to the credit of the state treasurer in the books of the secretary of state.

In the latter part of the same October, the assignee of the bank in bankruptcy commenced an action against Mills in the district court of the United States, to recover the collaterals received by him from the bank, claiming that he had received them in violation of the bankrupt law. About the same time, or soon after, Mills collected on such collaterals about $10,600. The action resulted in a judgment in that court against Mills for the sum thus collected. The date of the judgment is March 28, 1874. The evidence tends to show that Mills has paid such judgment.

Mills used the money which he realized on the collaterals, to take up orders regularly drawn on him as hospital treasurer by the proper officer for the payment of demands against the hospital payable out of the appropriation.

On retiring from office, *Bætz* paid over to his successor the amount of moneys of the state which his books, and those of the secretary of state, showed was in his hands as state treasurer. But, inasmuch as those books showed that the $10,000 claimed in this action had been paid to the hospital treasurer, that specific money was not paid over by *Bætz* to his successor in office.

On the above facts, the court nonsuited the state; and from the judgment entered pursuant to the nonsuit, the state appealed.

A brief was filed for the appellant by the attorney general, and the cause was argued orally by *H. W. Chynoweth*, assistant attorney general. They argued, substantially, as follows: 1. The statute (R. S. 1858, ch. 10, sec. 38)· provides that the state treasurer shall pay out moneys in the state treasury "*as directed by law.*" The bond in suit was given to secure the

performance of this among other duties. The law in regard to payments by that officer is, that "*all* payments of money from the state treasury shall be made *upon the warrant of the secretary of state;* and it shall be unlawful for the secretary of state to credit the state treasurer for any sum of money paid out otherwise than as provided in this act." Tay. Stats., 272, § 55. No such warrant would be valid unless signed by the secretary himself. *State v. Hastings*, 10 Wis., 533. The paper claimed to be a warrant in this case was not signed by the secretary, nor even by the assistant secretary in his official name, but was merely indorsed by the assistant secretary of state in his individual name. Payment on such a paper was contrary not only to law, but also to custom, as the evidence shows. This $10,000, therefore, if paid at all, was paid in direct violation of law; and this was a breach of the bond for which a suit will lie for recovery of the whole amount so paid. *U. S. v. Keehler*, 9 Wall., 83, and cases there cited; *Halbert v. The State, etc.*, 22 Ind., 126; *State v. Harper*, 6 Ohio St., 607; *Comm. v. Comly*, 3 Pa. St., 372; *Muzzy v. Shattuck*, 1 Denio, 233; *Inhabitants of Hancock v. Hazzard*, 12 Cush., 112; *People v. Smith*, 12 Ill., 281. 2. Where A. owes B. a sum of money, and B. owes C. a like amount, and A., without the order or request of B., pays the amount to C., it is clear that in a suit by B. against A. for the debt due the former from the latter, A.'s payment to C. would not be a good defense. But that is the defense here made. 3. The true test as to the validity of a payment is, whether or not the payor could defend a suit by the payee. *Holmes v. Field*, 12 Ill., 424. In this case the state is the payor, the insane hospital the payee. The pretended payment was made by the public agent of the payor, by his individual bank check, to the public agent of the hospital. But only a payment in money binds the principal, in the absence of special authority in the agent to receive a different payment. *Sykes v. Giles*, 5 M. & W., 645; *Mudgett v. Day*, 12 Cal., 139; *Prather v. State Bank*, 3 Ind., 356; *Board of*

*Justices v. Fennimore*, 1 N. J. Law (Coxe), 242. The hospital, therefore, was not bound by this payment, and the $10,000 are now due it from the state. 4. Had the defendant *Bœtz*, under the circumstances in evidence, received the money from the bank on this check, and paid it over in cash ·to the hospital treasurer, the assignee of the bank could have recovered it from him under sec. 35 of the bankrupt act. The answer indeed alleges that he was not aware of the insolvent condition of the bank at that time; but the facts proved show the contrary, or at least were sufficient to go to the jury upon that question. In consequence of the judgment rendered against the hospital treasurer for the value of the collaterals obtained by him from the bank on the check, he did not get a dollar out of the check, · nor did the hospital, to which the money belonged. *Bœtz* could not confer on any one else a power which he did not himself possess, to draw the money on this check; and the amount was lost to him.

A brief was filed by *Vilas & Bryant* for the respondent *Bœtz*, and one by *F. W. Cotzhausen* for the sureties; and the cause was argued orally by *Wm. F. Vilas*. They contended, among other things, 1. That as between the state treasurer and the hospital treasurer, the facts in evidence clearly showed a valid payment by the former to the latter of the sum in question. *Pratt v. Foote*, 9 N. Y., 463; *First Nat'l Bank v. Leach*, 52 id., 350; *Smith v. Miller*, 43 id., 171; *Little v. Phenix Bank*, 2 Hill, 425, affirmed in 7 Hill, 359; *Gough v. Staats*, 13 Wend., 549; *Strong v. King*, 35 Ill., 9. 2. That as between the state and *Bœtz*, no liability on the bond was created by the mere fact that payment was made before the money was payable by law. That fact could no more affect the payment made by check, than it would affect one made in gold coin. The hospital treasurer's receipt, given after the money was properly payable, charged him with liability to the state as such treasurer, and relieved *Bœtz*, as effectually as if the money had been delivered at that time. *U. S. v. Lee*, 2

Cranch C. C., 462; *U. S. v. Freeman*, 1 Woodb. & Min., 45. If otherwise, *Bætz* is as liable for the $3,000 paid him by check on a Milwaukee bank, as for the $10,000 here in question; but that has never been asserted.  3. That no liability on the bond arises from the fact that the warrant was not signed by the secretary of state.  (1) No warrant was necessary to authorize the payment of such an appropriation.  [In support of this view counsel examined the various statutes bearing on the subject, viz.: R. S. 1858, ch. 10, sec. 27, subd. 9, sec. 28, sec. 40, subd. 2 (Tay Stats., 267–8, 271); Laws of 1860, ch. 80, sec. 1 (Tay. Stats., 267, § 31); Laws of 1860, ch. 274 (Tay. Stats., 267–8, §§ 32–35); Laws of 1866, ch. 3.]  (2) If the warrant was formally defective, the substance of the transaction was legal, and the funds transferred to the hospital treasurer were in fact duly credited to the state treasurer by the secretary of state.  At the close of the treasurer's term, that credit was approved and allowed again on his final settlement.  It is as auditor that the secretary keeps the accounts with the treasurer *(State v. Hastings,* 10 Wis., 530); and his credit to the treasurer audited the claim, and amounted to a ratification of the warrant by him, equivalent to a signature of it; while the credit by the officers authorized to make the settlement at the end of his term was a waiver of all unsubstantial defects in the vouchers.  If this were otherwise, not only could the whole payment of October 3d be recovered in this action as well as the $10,000, but an action would lie on the treasurer's bond, as the evidence shows, for every payment made during the last quarter year of his term.  4. That no cause of action arose from the fact that the payment was made in a bank check and not in legal tender.  (1) The doctrine that an agent to receive payment can bind his principal ónly by taking money, does not extend to every class of agents authorized to take payment; and circumstances may vary it in any case.  Story on Agency, § 181.  The rule proceeds upon the idea that the agent must render to the principal the identical thing he receives.  If the

agent have such contract relations, and such a course of dealing with his principal, that he is required merely to give the latter credit upon account, and at stated periods receive or render such balance as may be due upon a settlement, the rule has no application. Such is the relation of a bank to a depositor for whom it collects notes, to be put to his credit upon account when paid *(In re Bank of Madison,* 5 Biss., 515, and cases there cited); and such also is the relation of a public treasurer (as the hospital treasurer in this case) to his principal. *U. S. v. Lee,* and *U. S. v. Freeman, supra; U. S. v. Girault,* 11 How., 22; *U. S. v. Morgan,* id., 160; *U. S. v. Prescott,* 3 id., 578; *U. S. v. Dashiel,* 4 Wall., 182; *Boyden v. U. S.,* 13 id., 17; *Inhabitants of Hancock v. Hazzard,* 12 Cush., 112; *Muzzy v. Shattuck,* 1 Denio, 233; *Looney v. Hughes,* 26 N. Y., 514, 516 (7 Hill, 584, note a); *Fake v. Whipple,* 39 id., 394; *Board of Justices v. Fennimore,* 1 N. J. Law (Coxe), 242; *Comm. v. Comly,* 3 Pa. St., 372; *State v. Harper,* 6 Ohio St., 607; *Halbert v. The State,* 22 Ind., 125; *Morbeck v. The State,* 28 id., 86; *Thompson v. Board of Trustees,* 30 Ill., 99; *Supervisors v. Kaime,* 39 Wis., 468. (2) If it be the duty of a public disbursing officer *strictissimi juris* to pay in money, yet when payment is accepted in a bank check, and the transaction officially entered in the public accounts as complete, and the state discharged, and the public saved from all loss, the state cannot complain of the method of payment. In this case, the hospital treasurer's acceptance of and dealing with the check, and his official receipt for the appropriation, absolutely charge him with liability *( U. S. v. Girault, U. S. v. Lee, U. S. v. Freeman,* and *Board of Justices v. Fennimore, supra; Gibbons v. U. S.,* 2 Court of Claims, 421); while by reason of this receipt the secretary of state duly credited the defendant *Bætz* with the disbursement, and in the final settlement of his accounts the payment was duly allowed. Primarily, at least, according to the public accounts and the usual course of public business, as well as ac

cording to the just relations between the parties, the state should look to the hospital treasurer, and not to the defendant *Bætz*, for this fund. *U. S. v. Thompson*, 33 Md., 575. 5. That the undisputed facts show that the hospital treasurer not only received but disbursed the $10,000 as such treasurer, whatever secret idea he may at any time have entertained (*Bryant v. Smith*, 10 Cush., 169; *Savage v. Merle*, 5 Pick., 83; *Spencer v. Fredendall*, 15 Wis., 666); and, the money having thus been applied to the very purposes for which it was appropriated, so that the state has suffered no loss and incurred no liability on account of irregularities in the time and manner of payment, it has no cause of action on the bond in suit. *U. S. v. Thompson, supra.*

LYON, J. The learned assistant attorney general, who argued the case before this court with great ability, contended that the delivery by *Mr. Bætz* of his check of September 22d to the treasurer of the hospital, Mr. Mills, and its acceptance by the latter, was not a payment of the $10,000 on account of the appropriation to the hospital; and if a payment, that the state treasurer had no authority to make it before the first of October, and could not lawfully make it then without the proper warrant of the secretary of state.

The view we take of the case renders it unnecessary to determine either of these propositions. For the purposes of the case it will be assumed that they are correct. But it does not necessarily follow therefrom, as was also claimed by the counsel, that the defendants are liable on the official bond of *Mr. Bætz* for the $10,000 claimed. Notwithstanding these assumed irregularities, if the proceeds of the check, to the full amount thereof, came to the hands of Mr. Mills as hospital treasurer, and was used by him to pay the indebtedness of the hospital, for the payment of which the money was specifically appropriated by the legislature, the state has no grounds for its claim that the money remains in the hands of *Mr.*

*Bætz.* In that case there has been no such breach of his official bond as is assigned in the complaint.

If the treasurer pays an appropriation in advance of the time of payment appointed by law, or if he pays it without the warrant of the secretary of state, when such warrant is required, he takes the risk of being held liable upon his bond for any damages which may result to the state by reason of the irregular payment. But where the payment is made to a person to whom and for whose benefit the money is absolutely appropriated by law, and especially where the amount paid is placed to the credit of the treasurer in the books of the secretary of state (although perhaps irregularly), it is difficult to comprehend the principle upon which the state can recover the sum thus paid, in an action on the treasurer's bond, in which the nonpayment of the money is assigned as the breach.

If the appropriation be only payable in a certain contingency, and the treasurer pay it before the contingency happens, he takes the risk that the contingency will happen. Appropriations for the payment of official salaries at stated times are of this class. The treasurer may prepay a salary, and the officer to whom it is paid may resign, or die, or be removed from office, before the salary is payable. In such case, doubtless, the treasurer would be liable on his bond for the sum thus paid, and could be compelled to account for it to the state. But if such officer holds his office when the payment actually becomes due, there seems to be no good reason why the prepayment should not be held a valid payment from that time.

There is another class of appropriations where the money appropriated must pass through the hands of an intermediate officer or agent before it reaches its ultimate destination. The appropriations to the hospital for the insane belong to this class. If the state treasurer makes an irregular payment of the money appropriated to such officer or agent, and it fails to

reach the persons ultimately entitled to it, it is probable that an action may be maintained by the state, on the bond of the treasurer, to recover the amount of such irregular payment.

In each class of appropriations above mentioned, if the officer or person to whom and for whose benefit money is appropriated, receives the money, most assuredly the obligation of the state to him is discharged, no matter how irregular the payment. This being so, there seem to be no legal or equitable grounds upon which the state can compel the treasurer to refund the money, thus paid, after it has become absolutely due and payable to the person who has received it.

The attorney general relies upon the case of *United States v. Keehler*, 9 Wall., 83, as holding the doctrine for which he contends. Divested of all features not applicable here, the case is this: Keehler, the defendant, was a postmaster, and one Clemmens was a mail contractor. Keehler had special instructions from the post-office department to pay over the net proceeds of his office to Clemmens from time to time, upon production by the latter of proper orders and receipts from the department. Keehler paid Clemmens a balance in his hands of such net proceeds without the production of the department order and receipt therefor. When the payment was made, the government owed Clemmens an amount greater than he received from Keehler. The action was upon the official bond of Keehler to recover the sum thus paid to Clemmens; and Keehler and his sureties were held liable therefor. The grounds of the decision are thus stated by Mr. Justice MILLER, who delivered the opinion: " Can this voluntary payment to a creditor of the United States be pleaded to a suit on the bond? It is hardly necessary to say that such a payment is no compliance with the condition of the bond. It is therefore not good under a plea. of covenants or conditions performed. Nor can it be used as an equitable set-off, because it would produce endless confusion in the accounts of the department, and lead to double payments and serious embar·

rassments in its business, if every post master who had government money could select a creditor of the United States and pay what he might suppose the government owed him."

We do not question the soundness of that decision. But that case differs from this in several important particulars. Had Keehler been required by an act of congress to pay over the net proceeds of his office to Clemmens at a time certain, on production of the order and receipt of the post-office department, and had the amount paid by him to Clemmens been placed to his credit on the books of the department, although irregularly, we should have a case more nearly like this. Had the case presented these features, we venture the opinion that it would have been decided differently; for the perils of confusion of accounts, of double payments, and of embarrassments in the business of the department, would have been removed. Yet that is the strongest case cited to sustain the position of the attorney general.

It is now to be determined whether Mr. Mills received and disbursed the $10,000 claimed in this action, as hospital treasurer. If he did, and if he used it to pay demands for the payment of which the money was appropriated by the legislature, then, as already observed, there is no foundation for the claim that the money is still in the hands of *Mr. Bætz*, and that it should have been paid over by him to his successor in office.

The whole transaction, as it appears upon its face, is this: Mr. Mills received the check of the state treasurer as money, and receipted for the amount of it as money, on the appropriation, after the same was due and payable. He loaned the check to the bank of Madison as so much money, and received from the bank collaterals to secure the loan. He collected on the collaterals a sum of money exceeding the amount of the check, and with such money took up orders on him as hospital treasurer. These orders were properly drawn for the liabilities of the hospital for the payment of which the appropriation was made.

It seems perfectly clear to our minds that the legal results of these transactions are, that Mr. Mills received the money as hospital treasurer, just as effectually as though the state treasurer had paid over to him $10,000 in cash on the appropriation, on the first day of October; and that, by taking up the hospital orders with the money, he paid those orders, and thereby relieved the state from liability upon the demands for which they were issued.

True, when Mr. Mills received the collaterals, and when he took up hospital orders with the money which he realized on them, he was in peril of being compelled to account to the assignee of the bank of Madison, in bankruptcy, for the amount so realized. · If we understand his testimony correctly, he testified on the trial of this action in the circuit court, in substance, that he elected to consider the money collected on the collaterals as held by him for the assignee, if such assignee should recover the same; and the hospital orders which he took up with it, as his individual property.

We think it was not competent for Mr. Mills thus to change the character and effect of his acts. The money came to his hands (although indirectly) from the treasury of the state. He gave the state treasurer his official receipt for it. It was the money of the state in his hands, and he was the agent of the state to disburse it for specific purposes. He disbursed it for those purposes by paying it on proper vouchers to the persons for whose benefit it was appropriated. It seems impossible in the nature of things that, by the mere force of the will or intention of Mr. Mills, this money of the state in his hands can, in any contingency, become the money of the assignee, or the orders the property of Mr. Mills and valid claims against the state. Public officers and agents do not hold public funds by any such uncertain and dangerous tenure. When they disburse public funds as the law directs in taking up public indebtedness, such indebtedness is thereby paid; and they cannot become public creditors for the sums thus paid, even though

they intended to treat such funds as belonging to some individual, and to buy the demands of the public creditors, instead of paying them.

The fact that Mr. Mills was compelled by the judgment of the United States court to pay to the assignee of the bank the amount collected by him on the collaterals, is quite immaterial. It is his misfortune, if he has so dealt with the money of the state as to subject himself to loss. Notwithstanding such judgment, the fact remains that, as hospital treasurer, he received from the state treasury and properly disbursed the $10,000 which it is claimed in this action *Mr. Bætz* ought to have paid over to his successor in office.

In the late case of *Kinyon v. Stanton, ante,* p. 479, we held that a party who had drawn his funds from a bank on the day of its failure and in view of it, thereby rendered himself liable over on his check, on which, by reason of the negligence of the holder in not presenting it to the bank for payment in time, the drawer would not otherwise have been liable; and that the fact that such party had been compelled by the judgment of the federal court to repay the amount thus drawn, to the assignee of the bank in bankruptcy, did not relieve him from such liability. That case tends to establish the doctrine, that the rights and liabilities of all parties affected by the receipt and disbursement of the $10,000 in controversy were fixed before the assignee obtained his judgment, and are unaffected by it.

It is unnecessary to protract the discussion of the questions presented by this appeal. After careful consideration of the case, we conclude that, as hospital treasurer, Mr. Mills received from the state treasury the $10,000 claimed in this action, and disbursed the same according to law, paying therewith those demands against the hospital for the payment of which the money was appropriated; that the liability of the hospital and the state upon such demands was thereby discharged; and hence, that the failure of *Mr. Bætz* to pay over that specific

$10,000 to his successor in office is not a breach of any condition of his official bond.

It follows that the nonsuit was properly ordered, and that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.