CITY OF LOWELL *vs.* MASSACHUSETTS BONDING AND INSUR-
ANCE COMPANY & another.

Middlesex.   May 5, 1942. — February 24, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Bond*, Fidelity, Damages. *Damages*, For breach of contract. *Municipal
Corporations*, Officers and agents, Municipal finance, Contracts.
*Contract*, Validity, Of employment. *Practice, Civil*, Execution; Audi-
tor: recommittal; Exceptions: whether error harmful. *Error*,
Whether harmful. *Law of the Case. Civil Service.*

Upon a motion to recommit to an auditor, whose findings were not final,
for the purpose of having certain findings alleged to have been made
on inadmissible evidence struck out, no error was disclosed in a denial
of the motion "without prejudice to the right" of the moving party
"to raise the same questions as to the admissibility of evidence"
before the trial judge.

A decision of this court on a report in an action by a city on a bond,
affirming a striking from the defendant's answer of certain allegations
on the ground that they were not material to the issue whether there
had been a breach of the bond entitling the plaintiff to judgment for
its penal sum but related only to the amount for which execution
should issue, and that they would be unnecessary in a subsequent
proceeding to determine that amount, was not a decision on the merits
of the matters involved in the allegations struck out.

A city whose treasurer paid certain payrolls not bearing the affidavit
required by G. L. (Ter. Ed.) c. 41, § 41, nor approved for payment by
the auditor as required by § 52, suffered a loss through payments so
made to certain persons who had been illegally employed in violation
of civil service requirements and who could not have enforced such
payments, even though the city received a benefit from their work fully
equivalent to the sums paid them, and in an action by the city upon
the treasurer's bond it was entitled in equity and good conscience
under G. L. (Ter. Ed.) c. 235, § 10, to execution for the amount of the
payments made to such persons; but it suffered no loss through pay-
ments so made to certain other employees who had been legally em-
ployed, which were in satisfaction of its valid obligations to them, and
the amount of the payments to them should not be included in the
execution.

A valid obligation of a city to pay wages for work done by one illegally
employed in violation of civil service requirements did not result from
the fact that a notice respecting him by the commissioner of civil serv-
ice under G. L. (Ter. Ed.) c. 31, § 38, was not sent until after the per-
formance of the work.

A refusal by a judge sitting without jury to strike out evidence alleged to be immaterial did not disclose prejudicial error where findings by the judge showed that he had not been influenced by such evidence.

The admission of evidence, by a judge sitting without jury, of an immaterial fact, and a finding thereof, were not prejudicial error where his ultimate decision was correct as matter of law upon the pertinent facts found by him.

CONTRACT. Writ in the Superior Court dated October 26, 1936.

Following the decision reported in 304 Mass. 153, the case was referred to an auditor whose findings were not to be final. A motion to recommit to the auditor was denied by *Good*, J. The case was heard on the auditor's report and other evidence by *Greenhalge*, J.

*J. C. Reilly*, (*J. W. Flood* with him,) for the defendants.

*A. L. Eno*, for the plaintiff.

DOLAN, J. This is an action of contract brought by the plaintiff city against Charles R. Flood, its former treasurer, and the surety on Flood's official bond, which was given on February 8, 1935, to assure the faithful performance of Flood's official duties as treasurer of the city. G. L. (Ter. Ed.) c. 41, § 35 (see now St. 1939, c. 109, § 1), § 109A; c. 4, § 7, Thirty-fourth.

The alleged breach consisted of the payment by Flood of payrolls of the plaintiff's street department for the weeks ending October 5, 12, and 19 of the year 1935, to which payrolls there was not attached any affidavit of the plaintiff's superintendent of streets, and for the payment of which no warrant had been issued by the city auditor as required by G. L. (Ter. Ed.) c. 41, §§ 41, 52.

The original answers of the parties contained a general denial, and allegations that the payments involved were made in good faith to men properly hired who had done work for the city entitling them to the compensation paid, and were paid out of sufficient unencumbered appropriations; that the want of approval by the auditor or of oath by the head of the department was a purely technical omission not affecting the substantive right of the employees concerned to receive the money paid them; and that the payments by the defendant Flood discharged valid obliga-

tions of the plaintiff to its benefit and enrichment. On motion of the plaintiff these allegations were struck from the answers of the defendants as immaterial and irrelevant as a matter of law by the judge, who then reported the case to this court for determination of the correctness of his action. The case thus came before us (*Lowell* v. *Massachusetts Bonding & Ins. Co.* 304 Mass. 153), and the action of the judge was affirmed, the court holding that the "allegations in the answers, if proved, would not prevent judgment for the plaintiff in the penal sum of the bond, if the breach alleged should be proved," and that they "could affect only the amount 'due and payable in equity and good conscience for the breach of the condition,' for which the court 'shall award an execution.'" The court further said: "Even upon that issue we think those allegations immaterial" (page 155).

Thereafter the case came on for trial in the court below and was referred to an auditor. The material findings of the auditor follow: On February 9, 1934 (1935?), the defendant Flood was the duly qualified city treasurer. For the three weeks in question Flood paid out by cash or checks payrolls of the street department aggregating $61,845.91. Checks that had not been cashed were outstanding to the amount of $241.60, leaving a balance of $61,604.31 (the sum sought to be recovered by the plaintiff together with interest). Of this sum $18,067.20 was paid to duly qualified permanent and temporary employees. The balance of $43,537.11 was paid to persons whose employment was in violation of the civil service rules. All the employees had been paid the prevailing wage rates for the work actually performed, and the city had received full value and benefit from the work equal to the amount paid in wages therefor, and the employees illegally employed were hired personally or expressly or impliedly by authorization of the superintendent of streets. "The defendants in no manner requested or influenced the employment of the temporary men." By order of the city council transfers of certain sums were made to the credit of street maintenance, which, taking into consideration certain items that had been improperly

charged against the appropriation for street maintenance, resulted in a net deficit of $1,475.64. Unencumbered appropriations under the several classifications combined were, however, available to the street department and adequate to meet the payrolls in question. The defendants are not chargeable with the neglect to comply with the civil service laws and rules. A so called "reserve" ordinance adopted in 1933 was in force during October, 1935. "Notwithstanding the adoption of a statutory budget for 1935, and the provisions of the 'reserve system,' the obvious intentions of the budget law and reserve system ordinance were completely ignored, and the system failed to function properly, either through the failure of the street department personnel to cooperate with the [city] auditor or through failure of the auditor's office to post his books to conform with the requirements of the system." At this point in the opinion it is appropriate to state that one of the purposes of the so called reserve system ordinance was to assure current funds to pay each payroll by establishing encumbered balances in each department for the payment of permanent employees before any temporary or emergency workers could be employed. The auditor found, however, that "The defendants were in no manner responsible . . ." for the failure to comply with the budget law and the ordinance just referred to.

In concluding his report the auditor found (1) that if employment "without strict compliance with the civil service rules . . . was illegal to the degree that the value and benefits to the city . . . cannot be established as a defence 'in equity and good conscience'" under G. L. (Ter. Ed.) c. 235, § 10, execution should be awarded the plaintiff in the sum of $43,537.11 with interest from September 10, 1936; (2) that if, on the contrary, that defence was open to the defendants, execution should be awarded the plaintiff in the sum of $1,475.64; and (3) that if "the court finds that the city . . . obtained good and sufficient value for the three October payroll expenditures, that adequate appropriations were available, and the defendants are not chargeable with the neglect to comply with the civil

service laws and rules, the plaintiff . . . [should] not be awarded any damage."

Upon the coming in of the auditor's report the plaintiff filed a motion that the report be recommitted for the purpose of having findings alleged to have been made on inadmissible evidence or based on erroneous opinion of law struck out. The auditor had appended to his report certain evidence that was admitted by him over the objection of either the plaintiff or the defendants. The motion just referred to was denied "but without prejudice to the right of the plaintiff to raise the same questions as to the admissibility of evidence before the trial justice." The plaintiff excepted to this action. We perceive no error therein. The case thereafter proceeded to trial by agreement of the parties, before a judge in the Superior Court sitting without a jury. At the outset of the trial the defendants consented to entry of judgment for the plaintiff in the penal sum of the bond and interest, and the judge ordered that judgment be entered accordingly for $92,449.58. The case was then heard before the judge without a jury, with relation to the amount for which executions should issue (G. L. [Ter. Ed.] c. 235, § 10), upon the auditor's report and other evidence, all the parties having reserved the right to introduce further evidence.

The plaintiff moved to strike from the report all findings relative to the value or benefit of work performed in return for the payments in question, and to "unmade" transfers from the macadam sidewalk appropriation to street maintenance appropriation, and objected to their admission in evidence. The motion was denied subject to the plaintiff's exception. During the course of the trial the defendants introduced evidence tending to show that no notice was ever sent by the commissioner of civil service to any office of the plaintiff that certain persons were illegally employed and should not be paid, and to show that certain items charged to the street maintenance appropriation should have been charged to the macadam sidewalk appropriation. This evidence was admitted subject to the plaintiff's exceptions. The plaintiff introduced evidence to the

effect that the civil service commissioner received copies of the payrolls in question of the street department on November 18, 1935, and that by letter, dated November 20, 1935, he notified the city auditor not to approve payment to any person other than the regular employees of the street department and those temporary employees whose employment had been approved by the department of civil service.

After hearing, the judge filed a "Statement of Findings and Rulings." Therein the judge adopted the facts found by the auditor as true, and found that the facts set forth in the evidence offered at the hearing before him were true. He also found that from the sum of $61,845.91, unlawfully expended by the defendant Flood, the defendants were entitled to have deducted $241.60 represented by uncashed checks, $15,959.46 paid in wages to permanent employees of the street department, $1,692.81 paid to duly authorized temporary employees, and $414.93 paid to persons eligible for temporary employment; that certain persons had not been employed in strict compliance with the civil service requirements; that their employment was illegal for that reason and created no liability on the plaintiff's part to pay compensation therefor; and that therefore the defendants were not entitled "in equity and good conscience" to deduct the $43,537.11 so paid to those persons. The judge further found, if material, that there were sufficient funds in the combined appropriations allotted to the street department to pay the entire sums spent by the defendant Flood; and that proper bookkeeping would have added to the appropriation for street maintenance $2,982.02 in addition to the sum of $9,120.96 as found by the auditor, so that no deficit in that appropriation would have been made to appear. The judge ordered that execution issue for the sum of $43,537.11, with interest from September 10, 1936.

The plaintiff seasonably made forty-seven requests for rulings, of which twenty-five were denied by the judge, subject to the plaintiff's exceptions. Because of the result reached by the judge and the view that we take of the case,

the plaintiff's contentions will be largely disposed of by a consideration of its exceptions to the denial of its request for a ruling that the defendants were not entitled in equity and good conscience to deduct from the total payments made by Flood the amount paid to permanent and temporary employees legally employed, and to the granting of the defendants' request for a ruling to the contrary. The defendants' exceptions to the rulings of the judge that no further deductions should be allowed in equity and good conscience, that the employment of certain persons paid by Flood was not in strict compliance with civil service requirements and that their employment was illegal; to the denial of the defendants' motion that the findings of the auditor relative to the reserve ordinance be struck out; to the denial of their request for a ruling that this ordinance had no effect on the issues of the case; and to the admission of a certain letter sent to the city auditor by the commissioner of civil service under date of November 20, 1935, will be disposed of in the consideration of the defendants' contentions that (1) "the plaintiff in equity and good conscience is not entitled to execution in excess of one dollar"; and (2) "there has been no violation of the civil service laws and rules which is material and relevant to the issues in this case."

The statutory provisions with which the defendant Flood was found not to have complied, so far as material, follow: "No treasurer or other fiscal officer of any city other than Boston shall pay any salary or compensation to any person in the service or employment of the city unless the pay roll, bill or account for such salary or compensation shall be sworn to by the head of the department or the person immediately responsible for the appointment, employment, promotion or transfer of the persons named therein." G. L. (Ter. Ed.) c. 41, § 41. "The auditor or officer having similar duties in cities . . . shall approve the payment of all bills or pay rolls of all departments before they are paid by the treasurer." G. L. (Ter. Ed.) c. 41, § 52.

General Laws (Ter. Ed.) c. 235, § 10, relative to "Amount

of execution upon judgment for penal sum" of a bond, provides, so far as here pertinent, that "The court shall award an execution for so much of the penal sum as is then due and payable in equity and good conscience for the breach of the condition or other non-performance of the contract."

The plaintiff contends that it was adjudged by this court when the present case was here before (304 Mass. 153), that no evidence of value or benefit received by the plaintiff for work done by persons illegally paid by the defendant Flood is admissible in this action; in brief, that it has already been decided that the defendants are liable to the plaintiff for all funds illegally disbursed without regard to whom the payments were made.

When the case was here before it was in its first phase, that is, on the action on the bond under G. L. (Ter. Ed.) c. 235, § 9. The precise question for determination was whether the judge erred in striking from the defendants' answers the allegations to which we have already referred, and the court held that the allegations in question, if proved, would not prevent judgment for the plaintiff in the penal sum of the bond, if the breach alleged should be proved. That of course is provided in § 9. See *Merrill v. McIntire*, 13 Gray, 157, 166, 167. Continuing, however, we said that those "allegations could affect only the amount 'due and payable in equity and good conscience for the breach of the condition' for which the court 'shall award an execution.' § 10"; and that "Even upon that issue we think those allegations immaterial." (304 Mass. 153, 155.) That was so, since in the proceeding to determine for what amount execution should issue no pleadings are necessary. *Hatch v. Attleborough*, 97 Mass. 533, 538. Although the question of damages was not then before us, *Graham v. Middleby*, 185 Mass. 349, 355; *Hudson v. Miles*, 185 Mass. 582, 588; *Austin v. Moore*, 7 Met. 116, 124, nevertheless the question was argued by the parties and, responding, we said, in substance, that, assuming that upon the facts alleged persons paid by Flood, had they not been paid, could have recovered what was due them by action against the plaintiff

without first obtaining the oath of the departmental head or the approval of the auditor, the plaintiff was entitled to have its funds remain in its treasury until lawfully disbursed and was entitled to have all unlawful disbursements made good by the disbursing officer and his surety, and that their restoration was not to be delayed by an inquiry into the rights, if any, that Flood and his surety might acquire against the plaintiff by reason of such restoration, whereby, in effect, claims against the plaintiff would be paid with their money. While the result reached in the case was right, we feel obliged to depart from its reasoning to the effect, as before set forth, that, in proceedings to determine for what amount execution should issue in equity and good conscience, the defendants could not show in mitigation of damages the payments made by Flood in discharge of valid obligations of the city, even if in some subsequent proceeding they could recover the amount so paid. If in any subsequent proceeding the defendants could recover from the city for payments made as aforesaid, we think that they would be entitled to set up those payments in the proceedings for determination of what amount execution should issue in equity and good conscience. *Colerain* v. *Bell,* 9 Met. 499, 504. *Hatch* v. *Attleborough,* 97 Mass. 533, 538. In the *Colerain* case, where a collector of taxes was removed from his office within a year after the taxes were committed to him for collection, it was held, in an action upon his bond, that the award made by arbitrators should be recommitted for the arbitrators to "hear evidence on the point whether any of the persons taxed were wholly insolvent and unable to pay, so that the town lost nothing by the default of the collector in not distraining or arresting, or what damage the town actually sustained." In the *Hatch* case, which was an action against the treasurer on his bond, it was said, in substance, that the action was for debt on a penal bond in which judgment is always rendered for the penalty if any breach is proved; that the hearing to ascertain for what amount execution shall be awarded is an assessment of damages according to equitable principles; that no pleadings on either side are required; and that no

defect or admission in previous pleadings deprives either party of the right to complete adjustment of all the claims secured by the bond. And in *Quinn* v. *Brennan*, 148 Mass. 562, 565, in an action upon a bond entered into upon a petition for review of a judgment, the court said: "On a judgment rendered in an action upon a bond, the court is to award execution for so much of the penal sum as is then due and payable in equity and good conscience for the breach of the condition. . . . And it is for the plaintiff to prove how much is thus due." See also *Nelson* v. *Sanderson*, 285 Mass. 583; *Jennings* v. *Wall*, 217 Mass. 278, 284, 285; *Harmon* v. *Weston*, 215 Mass. 242, 246, 247. In *Waldo* v. *Fobes*, 1 Mass. 10, although the statute then in effect (St. 1798, c. 77, § 6) did not contain the words "equity and good conscience," nevertheless the court held that after judgment for the penal sum of a bond the assessment by the court of the amount for which execution was to be issued was a proceeding in equity.

We deem it necessary, in view of what we have just said, to determine whether the ruling of the judge to the effect that in equity and good conscience the defendants may deduct from the total sum paid in violation of G. L. (Ter. Ed.) c. 41, §§ 41, 52, the amount paid to persons legally employed by the city was correct. In other jurisdictions varying views have been announced. A Michigan statute required that all disbursements of school moneys should be made by an order drawn on the assessor by the director and countersigned by the moderator, and that all moneys belonging to a school district should be paid by the town treasurer to the assessor on warrants drawn by the director and countersigned by the moderator. In *People* v. *Bender*, 36 Mich. 195, the respondent treasurer paid over school district money to the assessor without a warrant, and the assessor in turn used the money to pay a school teacher who had a valid contract with the school district. The assessor, however, had not received the required order from the moderator. In that case it was held that "funds once in the hands of the town treasurer must in law be regarded as continuing in his official custody until lawfully drawn

out. Payments made otherwise are made in his own wrong, and cannot diminish the fund for which he is responsible" (page 198). See also *McCormick* v. *Bay City*, 23 Mich. 457, where it was held that no money could be lawfully paid out by the treasurer of the city officially, except upon regular warrants, and that the comptroller could not justify himself in paying out moneys without such warrants to a contractor at the request of the treasurer. See also *Hillyard* v. *Carabin*, 96 Wash. 366. We do not follow the cases just cited for reasons stated hereinafter.

A second rule announced in some jurisdictions is that, as the defendants here contend, so long as the municipality has received the benefits of the expenditure and full value therefor (which was found as a fact in the present case) the city has sustained no loss, and therefore, in equity and good conscience, execution should issue for nominal damages only. *Miller* v. *Jackson Township*, 178 Ind. 503. That case was a suit in equity on the bond of a former trustee of the township who had paid out moneys for services and purchases under contracts which the court held were utterly void. A majority of the court, however, conceding that those to whom the payments were made could not have recovered in case of nonpayment from the city, nevertheless held that the proceeding was one cognizable under the principles of equity jurisprudence, that the remedies and relief afforded thereunder should be applied; and that the taxpayers, having received the benefit of the expenditures, could not "come into a court of equity with hands laden with the fruits of the trustee's purchases, while they pray a decree for the restoration of the purchase price thereof" (page 524) and, in substance, that there was thus an equitable defence. Two judges, however, dissented because they did not concur in the reasoning of the majority, pointing out that the Indiana statute, which declares that such expenditures "shall be deemed by the board a balance of such fund unexpended in the hands of the trustee, for which he shall be liable upon his bond," had been repealed by judicial fiat, and that the opinion of the majority resulted in the anomaly that the furnishers of labor and ma-

terial under the void contracts could not recover from the city, but that nevertheless the money paid out on the contracts could not be recovered from the one making the payment. See *State* v. *Farris*, 197 Ind. 128.

A third rule is succinctly stated and applied in *Commonwealth* v. *McCormack*, 177 Ky. 474. It is to the effect that moneys disbursed in an unlawful manner by the wrongdoing official are paid out at his peril; that he, together with his sureties, shall be liable to the extent of the loss caused to the municipality; that, however, where the payments are made in a manner violating the procedure prescribed by statute, but in discharge of valid obligations of the municipality, since no loss has been suffered by it, no recovery shall be had; but that where money thus illegally paid has been expended in satisfaction of contracts which created no liability on the part of the municipality but were void, the official and his sureties are bound to make good the sums so paid, notwithstanding that full value was received through the materials and services furnished, and that such payments may be truly accounted as a loss to the municipality since it was under no obligation to make them. In the case just cited the collection and disbursements of the funds in question were improper and illegal because performed without compliance with the provisions of the governing statute. It was there held, however, that unless the funds were devoted to an illegal purpose the Commonwealth was not entitled after disbursement to recover from an officer the funds he may thus have expended; and that, the funds in question having been devoted to the purposes for which they were appropriated, and the State having received the benefits contemplated from that expenditure, the funds so disbursed could not be recovered from the official even though he might have failed to observe the strict letter of the law with reference to the manner of their disbursement. There was a demurrer to the count in the plaintiff's declaration whereunder recovery was sought for such disbursements and the count was held bad. The same rule has been announced in *Flowers* v. *Logan County*, 138 Ky. 59; *Prince-*

ton v. Baker, 237 Ky. 325. In other jurisdictions the rule has been laid down that the official or his surety is not liable for more than the actual loss, if any, sustained by a breach of statutory duties. Hoboken v. Kamena, 12 Vroom, 435. Savage v. Neal, 151 Tenn. 70. In the latter case, instead of paying out certain funds to the sinking fund commissioners for the retirement of indebtedness as required by the city charter, the city commissioners paid out the funds directly for the retirement of bonds of the city. There was no actual misapplication of the funds in the sense of a permanent diversion from the city's use. The court, conceding that the defendants had been guilty of a dereliction of duty in failing to follow charter provisions, held that "recovery upon the bonds must be measured by the loss or damage suffered by the city," and that since the city sustained no loss no recovery could be had. See Memphis v. Brown, 20 Wall. 289. In Stetler v. McFarlane, 230 N. Y. 400, 414, the court said: "We think defects of form are insufficient of themselves to make out waste and injury when a transaction has been consummated, and a lawful debt discharged."

We do not concur in the first rule to which we have referred above. It seems to us not to be in accord with the weight of authority, in that no effect is given thereby to the considerations of good conscience, considered in most jurisdictions that have discussed the subject matter, and embodied in our G. L. (Ter. Ed.) c. 235, § 10. Under the first rule the municipality is permitted to profit out of the wrongdoing of its official. In other words, he is subject to a penalty. The damages awarded under such rule are punitive. In this 'Commonwealth exemplary damages are not allowed unless authorized by statute. Ellis v. Brockton Publishing Co. 198 Mass. 538, 543, 544. Boott Mills v. Boston & Maine Railroad, 218 Mass. 582, 589. Genga v. Director General of Railroads, 243 Mass. 101, 109. This principle is recognized in Savage v. Neal, 151 Tenn. 70, 74, where the court held that the statutes under which the bonds sued upon had been given were not to be treated as penalty statutes. It is recognized in effect by

the provisions of G. L. (Ter. Ed.) c. 41, § 43, which fixes the penalty for violation of the provisions of § 41 as a fine of not less than $25 nor more than $100, and then only in case of wilful refusal or neglect to comply with § 41 (or § 42). We see no good reason why, in the absence of statute imposing any other penalty, a municipality should be placed in a better position when its officers have violated the law than it would have been in had they acted in strict compliance with the statute. In fixing damages under c. 235, § 10, the principle is accountability, not punishment. *Forbes* v. *Ware,* 172 Mass. 306, 310.

We are not in accord with the second rule discussed above. It appears to be based upon the premise that where a city has received full value through labor or services performed under void contracts it has suffered no loss. We think this proposition is fallacious in two respects — first, because it does not follow that, because a void contract has been entered into and labor and services constituting full value for the money paid have been performed, it was beneficial to the city to have the contract made in the first place. Sound fiscal and economic policy might indicate that the community would have been better off had the work not been performed. In the second place, we are of opinion that if because of its inherent illegality the contract was void and unenforceable and no liability was created on the part of the city to pay for the materials and labor furnished in connection with the work performed, it cannot properly be held that the city has sustained no loss by the payment for that for which as matter of law it was not obliged to pay and for which it could not pay properly. To adopt such a rule would be to break down the public policy of the Commonwealth with relation to municipal finance. Such a rule would encourage public officials to enter into any kind of illegal contract on behalf of the city, secure in the knowledge that so long as the labor performed or the materials supplied were of the value of the price paid therefor they, the officials, would not be held liable in the absence of fraud or bad faith.

We are of opinion that the third rule set forth above

is the true rule. It does not mulct in punitive damages the official who satisfies valid obligations of the city, though in a manner not in accordance with the requirements of the statutes. It does not allow the city to profit out of his irregular conduct in the satisfaction of obligations which the city was bound to pay. It recognizes the principle that, while judgment shall be entered for the penal sum of the bond, nevertheless the execution is to be awarded only for such sum as is due in good conscience and equity. That is in accordance with our pertinent statute. G. L. (Ter. Ed.) c. 235, §§ 9, 10. It finds support in cases decided by this court which we have already reviewed. To hold otherwise would be in effect to nullify the provisions of § 10, calling for the application of equity and good conscience, that is, fair dealing in the determination of what is due.

Applying the third rule to the facts in the case at bar, we are of opinion that in equity and good conscience the defendants should be allowed to deduct from the total payments made by the defendant Flood, the amount paid by him in satisfaction of valid obligations of the plaintiff to its employees who were legally employed, and who, if they had not been paid, could have enforced payment by the city. The approval of the payrolls by the superintendent of streets under oath and the certificate of the auditor provided for in G. L. (Ter. Ed.) c. 41, §§ 41, 52, were not conditions precedent to the obligation of the city to pay their wages. *Godfrey Coal Co.* v. *Gray*, 296 Mass. 323, 325. *Willar* v. *Commonwealth*, 297 Mass. 527, 529. *Lowell* v. *Massachusetts Bonding & Ins. Co.* 304 Mass. 153, 155, 156. See *Barnard* v. *Lynn*, 295 Mass. 144, 146. It follows from what has been said that the ruling of the judge, that the deductions just referred to should be allowed, was right, and that the plaintiff's exceptions thereto must be overruled. It also follows that the ruling of the judge, that the defendants cannot make any deductions from the amount paid by Flood to the persons who were illegally employed, was right.

The defendants, however, have argued that under G. L.

(Ter. Ed.) c. 31, § 38 [1] (in force in 1935; see now St. 1939, c. 422, § 3), the Legislature, contemplating the possibility of employment in violation of civil service rules, intended that persons thus employed should have a right to compensation until one week after notice to the employer, employee and disbursing officer; that in the instant case no notice was sent until after the three weeks in question, nor, so far as appears, at any time to the employees involved, and that accordingly the payments made to them discharged valid obligations of the city. We do not concur in this argument, in view of the long line of decided cases in which it has been held that one who contracts with a city is bound at his peril to know the authority of the officer with whom he contracts to enter into the contract, and that a contract unlawfully entered into, though in good faith, creates no liability on the part of the city to pay for it, even in quantum meruit for goods furnished or labor performed. Contracts unlawfully entered into create no obligation on the part of a city, and payments thereon may be enjoined. *Railroad National Bank* v. *Lowell,* 109 Mass. 214, 215. *Bartlett* v. *Lowell,* 201 Mass. 151, 155. *McGovern* v. *Boston,* 229 Mass. 394, 397. *Safford* v. *Lowell,* 255 Mass. 220, 227. *Fluet* v. *McCabe,* 299 Mass. 173, 178. *Cook* v. *Overseers of Public Welfare in Boston,* 303 Mass. 544, 547. In the absence of a direct provision in c. 31, § 38, for the payment of persons illegally employed, pending the notice therein provided for, we are of opinion that the statute was intended to provide for an order to cease and desist from making such payments, and not to validate the act of the official employing them in violation of law,

---

[1] G. L. (Ter Ed.) c. 31, § 38: "If, in the opinion of the commissioner, a person is appointed or employed in the classified public service in violation of any provision of this chapter or any rule of the board, the commissioner shall, after written notice mailed to the appointing or employing officers, and to such person, notify in writing the treasurer, auditor or other officer whose duty it is to pay the salary or compensation of such person, or to authorize the drawing, signing or issuing of the warrant therefor; and the payment of any salary or compensation to such person shall cease at the expiration of one week after the mailing of the notice to such treasurer, auditor or other officer, and no such officer shall pay any salary or compensation to such person, or draw, sign or issue, or authorize the drawing, signing or issuing of any warrant therefor, until the legality of such appointment or employment is duly established."

or the illegal act of the disbursing officer in making payments to them in violation of the statute requiring the employing officer to make oath to the payrolls and requiring a warrant from the city auditor before payment.

There was no prejudicial error in the denial of the defendants' motion that the findings of the auditor relative to the reserve ordinance be struck out, nor in the denial of their request for a ruling that this ordinance had no effect on the issues of the case. The finding of the judge that there were sufficient funds in the several combined appropriations allotted to the street department to pay the expenditures complained of by the plaintiff, and his conclusion that the defendants could deduct the amount paid by them to those legally employed, indicate that the judge was not influenced by the evidence with relation to the breaking down of the budget and reserve system, for which, as found by the auditor and the judge, the defendants were in no way responsible.

The plaintiff was not prejudiced by the admission of evidence tending to show, as found by the judge, that under proper bookkeeping entries no deficit in the appropriation for street maintenance was created by the payments made by Flood, nor by the evidence relating to the transfer of funds. The plaintiff prevailed with relation to payments made to those found to have been illegally employed. In the matter of those legally employed, even if a deficit had been created by the payments made to them, in fact even had no appropriation been made for their compensation, had they not been paid, they could have enforced payment by the plaintiff. *Barnard* v. *Lynn,* 295 Mass. 144. *Forbes* v. *Woburn,* 306 Mass. 67. *Callahan* v. *Woburn,* 306 Mass. 265, 267.

The defendants' exceptions to the admission of evidence tending to show, as found by the judge, that certain persons to whom Flood had made payments were illegally employed in violation of the civil service laws, are overruled. The evidence was competent upon the question as to the amount for which execution should issue, just as was the evidence introduced by the defendants, to their advantage,

that certain persons to whom payments had been made by Flood were legally employed. The evidence warranted the findings of the judge as to each of these classes of persons to whom the payments in question were made.

We have examined all of the other exceptions of the plaintiff and the defendants that have been argued by them and that have not been disposed of by what we have said, and discover no prejudicial error on the part of the judge with respect to them.

In so far as we have decided herein that the judge did not err in allowing the defendants for payments made by Flood irregularly but in satisfaction of valid obligations of the city, this opinion is that of a majority of the court.

*Plaintiff's exceptions overruled.*
*Defendants' exceptions overruled.*