Valerie FREEMAN, Plaintiff,

v.

WORLD AIRWAYS, INC., and Massachusetts Port Authority, Defendants.

Joy and John OLSZEWSKI, Plaintiffs,

v.

WORLD AIRWAYS, INC., and Massachusetts Port Authority, Defendants.

Civ. A. Nos. 82–1216–K, 84–284–K.

United States District Court, D. Massachusetts.

Oct. 24, 1984.

Abner R. Sisson, Sisson, Lee & Bloomentahl, Boston, Mass., Marc S. Moller, Kreindler & Kreindler, New York City, for plaintiffs.

James Meehan, Maynard Kirpalani, Parker, Coulter, Daley & White, Boston, Mass., for World Airways, Inc.

. William Guy Ferris, Nutter, McClennen & Fish, Boston, Mass., for Massachusetts Port Authority.

Joan I. Milstein, Asst. U.S. Atty., Philip Kolczynski, Aviation Trial Atty., U.S. Dept. of Justice, Washington, D.C., for United States, FAA, Dept. of Transp.; William Gallo, Litigation Div., FAA, U.S. Dept. of Transp., Washington, D.C., of counsel.

### Opinion and Order

KEETON, District Judge.

These are two among over thirty consolidated actions arising out of a crash of a World Airways commercial jetliner at the Boston-Logan International Airport (Logan Airport) on January 23, 1982. Plaintiffs allege negligence on the part of World Airways, Inc. (World Airways), the Massachusetts Port Authority (Mass. Port), and the Federal Aviation Administration of the Department of Transportation, United States of America (FAA). The plaintiffs in several of the consolidated actions, including these two, suffered personal injuries in the crash and seek both compensatory and punitive damages from one or both of the defendants, World Airways and Mass. Port. No punitive damages are alleged against the FAA. World Airways and Mass. Port move for partial summary judgment on the issue of punitive damages. Pursuant to a scheduling order as to these two actions only, the interested parties have filed briefs supporting and opposing the motions for partial summary judgment. This opinion addresses the choice of law problem concerning punitive damages asserted specifically by the named plaintiffs in these two actions.

### I.

The facts relevant to the choice of law issue are undisputed. On January 23, 1982, a World Airways passenger airliner skidded off the end of Runway 15 at Logan Airport in Boston, Massachusetts. The flight had originated in Oakland, California, and had stopped in Newark, New Jersey, before commencing its casualty flight to Boston.

Plaintiffs allege that World Airways was negligent in (1) failing to ascertain the weather conditions in Boston before leaving Newark; (2) failing to ascertain the condition of the runway before approaching and landing at Logan Airport; (3) failing to land the plane safely; (4) failing to train its employees regarding water rescue techniques during an emergency; and (5) failing to evacuate the aircraft safely after the crash. The plaintiffs Olszewski, who assert claims against Mass. Port, allege that Mass. Port was negligent in (1) maintaining Runway 15 in a hazardous condition; (2) failing to notify incoming flights of existing weather conditions; (3) failing to close Runway 15; and (4) failing to institute and perform adequate rescue procedures after the crash.

Defendants move for partial summary judgment on the issue of punitive damages. They argue that this court should apply the law of Massachusetts, the place of injury, and that Massachusetts does not allow punitive damages in personal injury cases. Plaintiff, Valerie Freeman, who asserts punitive damages against World Airways only, argues that this court should apply either the law of California, the principal

place of business of World Airways, the law of New Jersey, the place where the World Airways crew negligently made their decision to fly to Boston, or the law of Virginia, the plaintiff's place of domicile. Plaintiffs, Joy and John Olszewski, who assert punitive damage claims against both World Airways and Mass. Port, argue that this court should apply the law of New Jersey, their place of domicile. All plaintiffs contend that punitive damages are available in personal injury cases under the applicable state law.

## II.

Before proceeding to the choice of law problem, I address an issue raised by counsel for plaintiff, Freeman, in a status conference.

Freeman's attorney suggested that this court should not decide the choice of law problem with respect to punitive damages in a pretrial motion for partial summary judgment. His reasoning is that a state's interest in assessing punitive damages flows from the nature of the behavior of the party in the state. If the conduct of a party is considered innocuous, then the state where the conduct occurred has no interest in the outcome of the issue of punitive damages. However, if the defendant's conduct is particularly outrageous—wilful and reckless—then that state may have a great interest in applying its law of punitive damages. Thus, the argument proceeds, a decision whether to apply the punitive damages law of one jurisdiction or another should await a jury's inquiry into the conduct of the defendants. During the status conference, I expressed my doubt as to the validity of this argument. However, I encouraged counsel to develop the argument and present authorities in support of it in Freeman's brief opposing the defendants' summary judgment motion. The material submitted to this court since that conference has not elaborated upon the argument. I conclude that the question that Freeman wishes to submit to the jury would not advance the conflict of law analysis. Defendants do not contend that no

genuine dispute of fact exists as to plaintiffs' contention that defendants acted wilfully or recklessly. Rather, defendants assert that this dispute is not material to resolution of the choice of law issue. In proceeding to consider the defendants' motion for partial summary judgment with respect to the complaints of plaintiffs, Freeman and Olszewski, I assume that the evidence will be sufficient to support a finding of wilfulness or recklessness.

## III.

I approach the choice of law problem in the following manner. First, I examine the law of punitive damages in the relevant jurisdictions to ascertain whether the conflict is real. Second, if the conflict is real, I must as to each punitive damage claim determine what state's law would be selected by the choice of law approach of the forum state. Third, I must apply the state law chosen for each claim.

First, I turn to the law of punitive damages in personal injury cases in the relevant states: California, Massachusetts, New Jersey, and Virginia. Of these states, the parties dispute only the law in Massachusetts. The California Legislature has enacted a statute specifically allowing punitive damages in personal injury cases. *See* Cal.Civil Code § 3294 (West Supp.1984). Courts in New Jersey and Virginia have recognized similar recoveries under the common law. *See Berg v. Reaction Motors Division, Thiokol Chemical Corp.*, 37 N.J. 396, 181 A.2d 487 (1962); *Baker v. Marcus*, 201 Va. 905, 114 S.E.2d 617 (1960).

Massachusetts courts have refused to award punitive damages unless the legislature has specifically authorized such awards in a particular context. *See International Fidelity Ins. Co. v. Wilson,* 387 Mass. 841, 856 n. 20, 443 N.E.2d 1308, 1317 n. 20 (1983) ("Under Massachusetts law, punitive damages may be awarded only by statute."); *City of Lowell v. Massachusetts Bonding & Ins. Co.*, 313 Mass. 257, 269, 47 N.E.2d 265, 272 (1943) ("In this Commonwealth exemplary damages are not allowed unless authorized by statute."); *Boott*

*Mills v. Boston & Maine Railroad Co.,* 218 Mass. 582, 589, 106 N.E. 680, 683–84 (1914) (same). *See also Caperci v. Huntoon,* 397 F.2d 799, 801 (1st Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968); *Computer Systems Engineering, Inc. v. Quantel Corp.,* 571 F.Supp. 1365, 1369–70 (D.Mass.1983), *aff'd,* 740 F.2d 59 (1st Cir.1984). The Massachusetts Legislature has authorized punitive damages in wrongful death cases. *See* Mass.Gen.Laws ch. 229, § 2 (West Supp.1984). No similar provision has been enacted for personal injury cases. Thus, I conclude that a Massachusetts court would not award punitive damages to plaintiffs Freeman and Olszewski under Massachusetts law. *See City of Lowell,* 313 Mass. at 269, 47 N.E.2d at 272; *Boott Mills,* 218 Mass. at 589, 106 N.E. at 683–84. *See also* J. Ghiardi & J. Kircher, *Punitive Damages: Law and Practice* § 4.10 (1984); M. Minzer, J. Nates, C. Kimball & D. Axelrod, 5 *Damages in Tort Actions* § 40.02 (1984); Note, *Punitive Tort Damages in New England,* 41 B.U.L. Rev. 389, 390 (1961).

Freeman argues that Massachusetts generally allows punitive damages in all tort actions. She contends that the notion that punitive damages are not allowed unless the plaintiff dies is based upon flawed authorities and an overly restrictive interpretation of well-established Massachusetts tort principles. To support this contention, she primarily relies upon the Supreme Court's decision in *Day v. Woodworth,* 54 U.S. (13 How.) 363, 14 L.Ed. 181 (1851).

In *Day* the Supreme Court reviewed a decision of the Circuit Court of the United States for the District of Massachusetts involving the tort of trespass. The opinion primarily addressed the lower court's jury instruction on damages. The plaintiff on appeal argued that he should have received punitive damages in part to compensate him for counsel's fees. Although the opinion discusses the propriety and widespread adoption of punitive damages to punish the defendant's conduct, it in no way imposes such damages in a Massachusetts tort action. The punitive damages discussion simply explains that such damages are proper-

ly in the discretion of the jury and they are not available as a matter of right to compensate the plaintiff for counsel's fees. *Id.* at 371, 14 L.Ed. 181. Day does not purport to restate Massachusetts law nor does it preclude Massachusetts courts from denying punitive damages.

Even if I were to accept that *Day* established punitive damages in all tort cases in Massachusetts, the Supreme Court decided *Day* before it decided *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). After Erie, it is this court's duty to decide the issue of punitive damages as a Massachusetts court would decide it. *See generally* C. Wright, *The Law of Federal Courts* § 58 (4th ed. 1983). In light of this standard, the more recent cases decided by the Supreme Judicial Court of Massachusetts must control.

Freeman also argues that the only authority for the disallowance of punitive damages in personal injury cases consists of dicta in the cited Massachusetts cases. *See City of Lowell,* 313 Mass. at 269, 47 N.E. at 272; *Boott Mills,* 218 Mass. at 589, 106 N.E. at 683–84. To support her argument, she cites to *Burt v. Advertiser Newspaper Co.,* 154 Mass. 238, 28 N.E. 1 (1891), and *Ellis v. Brockton Publishing Co.,* 198 Mass. 538, 84 N.E. 1018 (1908), which held that "enhanced damages" may be awarded in cases in which there is a wilful injury to the plaintiff. This argument is unpersuasive. The Supreme Judicial Court has stated repeatedly that punitive or exemplary damages are not recoverable unless specifically authorized by statute. These statements, whether dicta or holding, have established a restrictive policy with respect to punitive damages. *See Computer Systems Engineering, Inc. v. Qantel Corp.,* 571 F.Supp. at 1369–70, *aff'd,* 740 F.2d at 70. The fact that Freeman cannot cite to one case awarding punitive damages in a personal injury context adequately demonstrates the force of the Supreme Judicial Court's "dicta."

Freeman's citations to *Burt* and *Ellis* further support the proposition that puni-

tive damages are not available in Massachusetts. In these cases the Supreme Judicial Court approved "enhanced damages" for injured feelings as a result of the wilfulness of the defendant's conduct. However, the court carefully noted that such damages were entirely compensatory and not punitive. *See Burt*, 154 Mass. at 245, 28 N.E. at 5; *Ellis*, 198 Mass. at 543, 84 N.E. at 1020. The defendants' motion for partial summary judgment addresses only the plaintiffs' punitive damage claims. It does not involve compensatory damage issues.

Based upon the foregoing analysis, I conclude that under Massachusetts law punitive damages are not recoverable in personal injury cases.

■ Before reaching the question of the forum state's approach to choice of law problems, I address one argument advanced by plaintiff Freeman that, if successful, would eliminate the real conflict of laws. Freeman argues that, if Massachusetts law is interpreted to deny punitive damages in personal injury cases and to allow such damages in wrongful death cases, this court should find that position unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.

Several courts of appeals have addressed and rejected analagous arguments concerning the recovery of punitive damages. *See In re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d 594, 608–10 (7th Cir.1981) (*In re Chicago Air Crash*) (a state's decision to allow punitive damages in personal injury cases and not wrongful death cases is constitutional), *cert. denied*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *In re Paris Air Crash*, 622 F.2d 1315 (9th Cir.) (same), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *Cf. Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145, 1148 n. 2 (1st Cir.1974) (N.H. statute that placed a $10,000 limitation on wrongful death actions but not personal injury actions is constitutional). The reasoning and analysis of these cases are persuasive. Using the rational basis level of scrutiny, I find that the Massachusetts Legislature could conclude that the state's interest in deterrence of wilful conduct is outweighed by the possibility of excessive damages in cases in which the injuries do not result in death. Thus, the decision to deny punitive damages in personal injury cases is constitutionally permissible.

## IV.

Based upon the foregoing analysis, a real conflict exists between the law of Massachusetts and the laws of California, New Jersey, and Virginia on the issue of punitive damages. To resolve the conflict in this diversity case, this court must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Massachusetts law therefore governs which law should apply on the issue of punitive damages. *See Computer Systems Engineering, Inc., v. Qantel Corp.*, 740 F.2d 59, 70 (1st Cir. 1984).

In the last decade Massachusetts courts have shifted their choice of law analysis from the traditional doctrine of lex loci delicti to a more functional approach. *See Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 450 N.E.2d 581 (1983); *Choate, Hall & Stewart v. SCA Services, Inc.*, 378 Mass. 535, 392 N.E.2d 1045 (1979); *Pevoski v. Pevoski*, 371 Mass. 358, 358 N.E.2d 416 (1976). Recent opinions of the Supreme Judicial Court indicate that Massachusetts would follow an analysis similar to if not identical with that of the *Restatement (Second) of Conflict of Laws*. *See Cohen*, 389 Mass. at 333–37, 450 N.E.2d at 585–87. *See also Computer Systems Engineering, Inc.*, 740 F.2d at 70; *Engine Specialties, Inc. v. Bombardier, Ltd.*, 605 F.2d 1, 19 (1st Cir.1979), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980); *Schulhof v. Northeast Cellulose, Inc.*, 545 F.Supp. 1200, 1203 (D.Mass.1982). Thus, this court must analyze the choice of law regarding the issue of punitive damages under the *Restatement*'s approach.

The *Restatement* provides that "In an action for a personal injury, the local law of

the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship [to the parties and the occurrence] ...." *Restatement (Second) of Conflicts* § 146 (1971). *See id.* § 145. A determination of the most significant relationship involves a consideration of the general factors underlying a particular legal issue, *see id.* § 6, and an application of these factors to the specific contacts of the tortious conduct, *see id.* § 145(2). *See generally In re Chicago Air Crash,* 644 F.2d at 611–12. In the sections below I apply the Restatement's approach to the plaintiffs' punitive damage claim against each defendant.

## A. *Freeman and Olszewski's Punitive Damage Claim Against World Airways.*

■ Plaintiffs Freeman and Olszewski allege punitive damages against World Airways. First, I must examine the parties' contacts with the various states. *See Restatement (Second) of Conflicts* § 145 (1971). The injury occurred in Massachusetts. *See id.* § 145(2)(a). The conduct causing the injury allegedly occurred in California, Massachusetts, and New Jersey. *See id.* § 145(2)(b). Although World Airways is incorporated in Delaware, its principal place of business is in California. *See id.* § 145(2)(c). Plaintiff Freeman is a resident of Virginia, and the Olszewski plaintiffs are residents of New Jersey. *See id.* And, in this case, the center of the parties' relationship is unclear. *See In re Chicago Air Crash,* 644 F.2d at 612.

Using this factual background of events and contacts, I must weigh the relative interests of the relevant states in their application of the law of punitive damages. *See Restatement (Second) of Conflicts* § 6 (1971). The primary purposes underlying a state's decision to allow punitive damages are to punish the defendant and to deter others from following similar conduct. *See In re Chicago Air Crash,* 644 F.2d at 613; *Schulhof v. Northeast Cellulose, Inc.,* 545

F.Supp. 1200, 1206 (D.Mass.1982). Such damages are not awarded to compensate the plaintiff. *See id.; In re Air Crash Disaster at Washington, D.C. on January 13, 1982,* 559 F.Supp. 333, 353 (D.D.C.1983) (*In re Washington, D.C. Air Crash*). The primary purposes underlying the disallowance of punitive damages are to protect defendants from excessive liability and thus to encourage businesses to locate and conduct economic affairs in the jurisdiction. *See Schulhof,* 545 F.Supp. at 1206.

As noted before, the *Restatement* requires that courts addressing choice of law issues in personal injury cases give preference to the place of injury, unless another state has a more significant relationship. *See Restatement (Second) of Conflicts* § 146 (1971); *In re Chicago Air Crash,* 644 F.2d at 616. Thus, I first address Massachusetts' interest in denying punitive damages to plaintiffs Freeman and Olszewski.

The World Airways crash presents an unusual situation. Frequently, airplane crashes allegedly result from a design or manufacturing defect. *See Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 675 (2d Cir.1983). Courts have characterized the place of injury in such cases as fortuitous. *See In re Chicago Air Crash,* 644 F.2d at 615. In those cases courts have given less weight to the place of injury because that state's interest and ability to regulate wilful or reckless conduct through the imposition of punitive damages is less significant than the interest of the state of wrongful conduct or the defendant's principal place of business. *See In re Washington, D.C. Air Crash,* 559 F.Supp. at 348; *Restatement (Second) of Conflicts* § 145 comment e (1971). This is not the case with the World Airways crash. Massachusetts, the place of injury, was also the location of most of World Airways' alleged negligent conduct and other conditions that contributed to the cause of the crash.

Freeman and Olszewski allege negligence on the part of World Airways for (1) its approach to Logan Airport, (2) its conduct during the landing, and (3) its conduct

relating to rescue operations after the crash. Plaintiffs allege only one act on the part of World Airways that occurred outside of Massachusetts and allegedly was a contributory cause of the crash. They allege that World Airways failed to ascertain the weather conditions before leaving New Jersey. The remaining allegation relates to World Airways' conduct after the casualty. Thus, according to the plaintiffs' own allegations, most of World Airways' alleged wrongful conduct occurred in the Commonwealth of Massachusetts, the place of injury. This circumstance gives Massachusetts a significant interest in the outcome of the punitive damages question.

Massachusetts' interest is further strengthened by the circumstances of the crash. The weather conditions and the landing operations at Logan Airport allegedly contributed to the cause of the crash. *See In re Washington, D.C. Air Crash*, 559 F.Supp. at 349 ("The instant case is not one where the injury might have occurred in 'one of any number of states.'"). Indeed, no one disputes the role of the severe weather conditions at the time of the casualty flight. These conditions allegedly combined with the physical location of the airport's runways near the Boston Harbor in contributing to the accident. These additional points of contact with Massachusetts give the state added interest in the choice of law determination.

Both Freeman and Olszewski argue that Massachusetts has no interest in a suit between a nonresident plaintiff and a California defendant. This argument misinterprets the significant relationship analysis. A court must look at a state's interest in regulating conduct in its jurisdiction. Massachusetts has a significant interest in regulating conduct (deterrence or encouragement) of planes arriving at Logan Airport during the winter. A rule imposing or denying punitive damages would have a potential impact upon carriers' decisions to travel to Massachusetts during difficult weather conditions. *In re Chicago Air Crash*, 644 F.2d at 615–16.

In light of the substantial contacts presented by this casualty to the Commonwealth of Massachusetts along with the state's restrictive policy regarding punitive damages, I find that Massachusetts has a very substantial interest in deciding the punitive damages issue. That interest must control unless plaintiffs can show that another jurisdiction has a more significant interest.

Freeman argues that California has the strongest interest in the issue of punitive damages because it is World Airways' principal place of business. It is true that California has a strong interest in regulating the conduct of its corporations. That interest is especially important when the place of injury is fortuitous. However, in this specific case, California's relationship to the accident is not as significant as that of Massachusetts.

The only alleged act of negligence that may have taken place in California is World Airways' alleged failure to properly train its employees to conduct water rescue procedures during an emergency. And, this act is relevant only to World Airways' negligence after the crash. Thus, California's interest is primarily related to the general care with which World Airways conducts its operations, not to the specific conduct that contributed to this accident. Although this interest is significant, it is not as strong as it would be if the airline industry were not covered by federal regulations that prescribe standards of safety. In fact, plaintiff Freeman's complaint alleges that if World Airways' crew had followed its own procedures, they would have determined that the weather conditions made it impossible to land in Boston. Thus, the defendant's conduct outside of California is more relevant to the cause of this particular crash. Therefore, I find that Massachusetts' relationship to this particular incident is greater than that of the State of California.

Freeman also argues that New Jersey, as the place of part of the negligent conduct, has a stronger interest than Massachusetts in the issue of punitive damages.

According to the plaintiffs' allegations, World Airways failed to ascertain the weather conditions in Boston, before departing Newark. Freeman also points to the fact that she purchased her ticket in New Jersey. Although these contacts give New Jersey an interest in this case, they do not combine to outweigh the interests of the Commonwealth of Massachusetts. Clearly, Massachusetts, as the place of injury and most of World Airways' alleged wrongful conduct directly relating to the cause of the crash, has a more significant interest in deciding the punitive damages issue. *See Detterline v. Downeast Airlines, Inc.*, 17 Aviation Cases (CCH) 17,628 (Mass.Superior Court 1982) (Maine law governed issue of punitive damages in airplane crash that occurred in Maine even though one act of negligence—pilot left Logan Airport with knowledge of unfavorable weather conditions—occurred in Massachusetts).

Plaintiffs Freeman and Olszewski finally argue that their respective states of domicile have more interest in the issue of punitive damages than the Commonwealth of Massachusetts. In these two cases they argue that this court should apply the law of Virginia to Freeman's punitive damages claim, and the law of New Jersey to Olszewski's punitive damages claim. Several courts have recently addressed the question of a domiciliary state's interest in the issue of punitive damages. *See In re Chicago Air Crash*, 644 F.2d at 612–13; *In re Washington, D.C. Air Crash*, 559 F.Supp. at 353. These decisions have held that the domiciliary state's interest ends once its resident receives the full measure of compensatory damages. They may be read as reasoning further that, because punitive damages are not to compensate the plaintiff, the state of domicile has no interest in the punitive damages issue.

Surely, it is true that a domiciliary state's interest in the issue of punitive damages is smaller than its interest in compensatory damages. Very likely, it is an overstatement of the point, however, to assert that a domiciliary state has no interest in the punitive damages issue. A domiciliary state's interest exists to the extent that such damages may help to ensure the safety of its citizens when they travel in foreign states. This is especially true to the extent that the legal system relies on private citizens as private attorneys general to bring appropriate civil actions that will serve to punish wilful and reckless conduct. It does not follow, however, that a domiciliary state has the most significant interest in the punitive damages issue. In this case Massachusetts' relationship to the casualty clearly outweighs any interests held by the states of New Jersey and Virginia.

Even if one combines the interests of California, New Jersey, and Virginia, *see Restatement (Second) of Conflicts* § 145 comment i (1971), the Commonwealth of Massachusetts has a greater interest in the punitive damages issue. The location of the injury, most of the alleged negligent conduct, and the physical conditions (weather and geographic), all give Massachusetts the most significant relationship to the parties and the casualty.

Some of the arguments asserted in the plaintiffs' briefs are premised upon the assumption that a state that allows punitive damages has a greater interest in the issue than a state that denies such damages. This assumption misinterprets the Restatement's approach. "[B]oth the decision to allow punitive damages and the decision to disallow punitive damages must be accorded great respect." *In re Chicago Air Crash*, 644 F.2d at 615.

Based upon the foregoing analysis, I conclude that Massachusetts' interest in applying its law to the issue of punitive damages is greater than the interests of California, New Jersey, and Virginia.

B. *Olszewski's Punitive Damage Claim Against Mass. Port.*

■ The Olszewski plaintiffs allege punitive damages against Mass. Port. They argue that New Jersey has a more significant interest than Massachusetts on the issue of punitive damages over the defendant Mass. Port. They primarily assert

that Mass. Port should not be able to shield itself from liability simply because the accident occurred in Massachusetts. And, because Mass. Port has significant contacts with various other states and nations, they contend that it should expect to account to other jurisdictions for both compensatory and punitive damages.

As noted above, Massachusetts has the most significant interest in applying its law of punitive damages to defendant World Airways. Massachusetts' relationship with respect to the application of punitive damages to defendant Mass. Port is even greater. The Commonwealth of Massachusetts created the corporate entity, Mass. Port, in part to own and control certain operations at Logan Airport. Although Mass. Port has contact with various foreign carriers, all of its conduct is initiated from Massachusetts and in accordance with local laws and regulations. In this case all of the alleged negligent conduct occurred in Massachusetts. The Olszewski plaintiffs allege that Mass. Port was negligent in (1) maintaining Runway 15 in a hazardous condition; (2) failing to notify incoming flights of the existing runway and weather conditions; (3) failing to close the runway; and (4) failing to institute and perform adequate rescue procedures.

In light of the policies underlying punitive damages, it is clear that Massachusetts has the most significant interest in regulating the conduct of its Port Authority. Thus, the Massachusetts law must govern the punitive damages claim against Mass. Port.

### V.

Based upon the foregoing discussion, the law of Massachusetts controls Freeman and Olszewski's claims of punitive damages against the defendants. As noted above, Massachusetts does not allow punitive damages in personal injury cases.

### ORDER

For the foregoing reasons, it is ORDERED:

World Airways' motion for partial summary judgment is granted.

Mass. Port's motion for partial summary judgment is granted.